| iDOUCET, Chief Judge,
dissenting.
I respectfully dissent from the majority in this matter. The evidence does not support a finding that Dr. Sagrera breached the standard of care in either the first or the second procedure.
Dr. Sagrera testified that he has performed the Parkland procedure for tubal ligation between 700 and 1000 times without incident. Normally, after making an incision in the patient’s abdomen, he locates the fallopian tube at its beginning near the top of the uterus. Holding it with clamps, he follows the tube from the uterus down to its fimbri-ated end. In Ms. Leyva’s case, he was not able to see the entire left fallopian tube at once due to enlargement and rotation of her uterus. He enlarged the incision to see better. He followed the tube with the clamps. He could see the left fallopian tube from its mid-portion to its fimbriated end before he ligated it. He stated that he is absolutely certain that he cut the tube. After the laboratory report came back he spoke to Ms. Leyva’s mother, Nellian Doré. Dr. Sagrera testified that he gave her several options and discussed the pros and cons of each with her. He believed that she understood the situation and the options available to her daughter. l2Mrs. Doré, however, testified that the doctor told her only that her daughter would have to have additional surgery to tie her *492 tabes. After discussing the matter with Ms. Leyva, her mother told the doctor that they would go ahead with the second surgery. The second procedure was performed six weeks after the first. The uterus had shrunk back to a normal size by that time, and after making a small incision, he could see the entire area. He saw the left fallopian tube. Upon examination, he could see that it had been cut and the black stitch in it. This was sufficient in his opinion to verify the success of the first operation. As a result, he did not believe that he need to cut it again. Therefore, he did not take a specimen. He testified that he told Leyva she was sterile.
Dr. Jack Pruitt testified on behalf of Ms. Leyva. He stated that the Parkland procedure of tubal ligation is done the same way nationwide. He stated that this method is primarily done immediately after delivery of a baby. In this procedure, the correct practice is to send a specimen of each cut section of fallopian to the pathology laboratory for independent verification that the fallopian tube has been cut. Not to take such a sample when doing the Parkland procedure would be a breach of the standard of care according to Dr. Pruitt. However, he testified that other methods of tubal ligation do not require that specimens be taken. When one of those methods is used, Dr. Pruitt opined that failure to take a specimen for independent verification would not be a breach of the standard of care. Dr. Pruitt stated that even the best surgeon cannot identify the fallopian tube with 100% accuracy. According to Dr. Pruitt the pathologist cannot always identify whether the specimen is fallopian tube until the specimen is sectioned and examined under a microscope. Dr. Pruitt felt that, in view of the pathology report, it was necessary to take further steps to insure that the left fallopian tube had indeed been ligated. Dr. Pruitt further stated that the failure |3of Dr. Sagrera to take a specimen during the second procedure was a breach of the standard of care because there is a small possibility of error when relying on vision alone.
Dr. J.R. Lahaskey testified on behalf of Dr. Sagrera as an expert in the field of Family Practice. He also served on the medical, review board which found no negligence on the part of Dr. Sagrera. Dr. La-haskey stated that it would have been a violation of the standard of care had Dr. Sagrera failed to send a specimen to the lab after the first procedure. However, he felt that it is impossible to confuse the fallopian tube with anything else if it is traced from its source at the uterus to its fimbriated end. Dr. Lahaskey stated that a surgeon ought to be able to recognize a fallopian tube when he sees one. Accordingly, he felt that Dr. Sagr-era did not violate the appropriate standard of care by failing to take a specimen in the second operation. Dr. Lahaskey stated that Dr. Sagrera’s visual verification was sufficient. He stated that if a physician reopens the patient, looks and sees any piece of the fallopian tube missing, this is sufficient verification that the patient has been sterilized.
There is nothing in the expert testimony which indicates that Dr. Sagrera did not possess the requisite degree of knowledge or skill, or that he failed to exercise reasonable care and diligence in the first surgery performed on Ms. Leyva. Dr. Pruitt’s testimony contains no opinion as to the degree of knowledge or skill possessed by Dr. Sagrera. Further, he stated that even in the hands of the best surgeons, it is possible to misidentify the fallopian tube. He never states that it is a breach of the standard of care to fail to ligate one of the fallopian tubes through misidentification. Accordingly, the evidence does not support the conclusion that Dr. Sagrera breached the standard of care required of him in the first operation.
|4Further, the plaintiff does not allege and the proof does not show that Dr. Sagrera breached the standard of care by performing the second procedure. In fact, the testimony of Dr. Pruitt shows that this procedure was one of several appropriate measures to verify the success of the tubal ligation. While other measures were available, nothing of record shows that it was a breach of the standard of care to proceed with a mini-laparotomy. Since there was not a breach of the standard of care in the first operation, and since the mini-laparotomy was an appropriate measure to verify the success of the first operation, Ms. Leyva is not entitled to damages for any *493 pain suffered in recovering from either procedure.
The plaintiff, however, contends that Dr. Sagrera breached the standard of care by failing to take a specimen of fallopian tube during the second procedure. As a result, she claims that she is still not sure whether she has been sterilized.
Assuming for the sake of argument that this would be a breach of the standard of care required in verifying the success of a sterilization procedure, it is also necessary for the plaintiff to establish, with adequate evidence, a causal connection between a defendant’s negligence and the plaintiffs injuries. Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La. 10/17/94); 643 So.2d 1228. In applying this rule to the ease before us, even it were assumed that the plaintiff had established the applicable standard of care, and that a breach of that standard could be inferred from facts and/or the testimony, plaintiff should fail in this lawsuit because there is no evidence to support a finding that the purported breach of the standard of care was the cause of the damages claimed by the plaintiff. While the plaintiff claims that her father, rather that Dr. Sagrera, told her that her left fallopian tube had been ligated, there is no evidence of record which would lend support to the plaintiffs claim that she was uncertain whether she was sterile. Plaintiff admits that she is not worried Rabout becoming pregnant. Further, the record contains no evidence connecting the subsequent appendectomy or the removal of the cyst from Ms. Leyva’s ovary to the failure to take a specimen of the fallopian tube in the second operation.
Accordingly, I would affirm the judgment of the trial court.